THIS OPINION IS
CITABLE AS PRECEDENT OF THE TTAB          June 6, 1997
Paper No. 13
GDH/LCB

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
————————

Trademark Trial and Appeal Board
————————

In re MediaShare Corporation
————————

Serial No. 74/634,610
————————

George H. Gates of Merchant, Gould, Smith, Edell, Welter &
Schmidt for applicant.

Chris Doninger, Trademark Examining Attorney, Law Office 105
(Thomas G. Howell, Managing Attorney).
————————

Before Sams, Simms and Hohein, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:


        MediaShare Corporation has filed an application to
register the mark "PB.WEB" for "computer software for publishing
information on a computer network and instruction manuals
therefor, sold together as a unit".[1]

        Registration has been repeatedly refused[2] on the ground
that the "fact sheet" brochures or "catalog pages" submitted as

---

[1] Ser. No. 74/634,610, filed on February 15, 1995, which alleges
dates of first use of August 1, 1994.

[2] Although the refusal to register was repeated rather than made
final, this appeal is properly before us inasmuch as Trademark Rule

specimens with the application as filed "are unacceptable as evidence of actual trademark use because they do not show use of the mark on the actual goods or labels or tags for the goods" nor do they constitute displays associated therewith[3] as required by Sections 1(a)(1)(C) and 45 of the Trademark Act, 15 U.S.C. §§1051 (a)(1)(C) and 1127, and Trademark Rule 2.56.[4]

---

2.141 provides, in relevant part, that:  "A second refusal on the same grounds may be considered as final by the applicant for purpose of appeal."

[3] While, in the application as originally filed, applicant alleged in the affixation clause that "[t]he mark is used by applying it directly to the goods; by printing it on labels affixed to the goods; by printing it on packaging or displays for the goods, and other ways customary in the trade," applicant subsequently amended such clause to state only that "[t]he mark is used by printing it on displays for the goods".

[4] Section 1 of the Trademark Act, 15 U.S.C. §1051, provides in pertinent part that, in the case of an application based upon use in commerce, the following requirement must be met (**emphasis added**):

> (a) The owner of a trademark **used in commerce** may apply to register his or her trademark under this Act on the principal register hereby established:
>
> > (1) By filing in the Patent and Trademark Office--
> >
> > (C) such number of **specimens** or facsimiles **of the mark as used** as may be required by the Commissioner.

Section 45 of the Trademark Act, 15 U.S.C. §1127, in turn defines "use in commerce" in relevant part as follows (**emphasis added**):

> For purposes of this Act, a mark shall be deemed to be in use in commerce--
>
> > (1) on goods when--
> >
> > (A) it is placed in any manner on the goods or their containers or **the displays associated therewith** or on the tags or labels affixed thereto, **or if the nature of the goods makes such placement impracticable, then on**

2

Applicant has appealed. Briefs have been filed,[5] but an oral hearing was not requested. We affirm the refusal that the specimens fail to evidence trademark use.

Applicant asserts that "the specimens originally submitted with the application are acceptable, since the specimens comprise catalog pages."[6] Referring to Examination Guide No. 1-94 and TMEP §905.06, which incorporates such guide, applicant asserts in particular that, as set forth therein, the Examining Attorney "should accept any catalog or similar specimen as a display associated with the goods provided that (1) it includes the picture of the relevant goods, (2) it includes the mark sufficiently near the picture of the goods to associate the mark with the goods, and (3) it includes information necessary to order the goods." Applicant maintains that, contrary to the Examining Attorney's contentions, each of these conditions has

---

> documents associated with the goods or their
> sale ....

In accordance therewith, Trademark Rule 2.56 provides in pertinent part that:

> The specimens shall be duplicates of the labels, tags, or
> containers bearing the trademark, or the displays
> associated with
>
> the goods and bearing the trademark (or if the nature of
> the goods makes use of such specimens impracticable then
> on documents associated with the goods or their sale) ....

[5] Although the Board approved applicant's request for an extension of time until July 8, 1996 to file its reply brief, such a brief has not been received.

[6] A copy of one such specimen is reproduced in the Appendix to this opinion.

been met, including a picture of a display screen its software generates on a computer monitor.

Specifically, applicant insists in this regard that, as shown on its "catalog page":

> The middle screen display includes a drop-down menu listing the function "generate HTML files". This drop-down menu listing comprises the "control panel" for the PB.WEB software, which is used as an add-on module to the PRODUCTBASE software. This drop-down menu is generated by the PB.WEB software.

The "PB.WEB" mark itself, applicant notes, appears on each of the specimens "in a prominent position across the top of the page, with the [three] screen displays located underneath the mark." "[T]he entire catalog page," applicant further asserts, is "devoted to a description of the PB.WEB software." Finally, applicant contends that despite the absence of any information on pricing, each specimen provides everything necessary to order the goods:

> The catalog page provides a description of the PB.WEB module, a list of System Requirements necessary to operate the software, an identification of MediaShare as the source of the goods, and address and telephone information for ordinary purposes. Apparently, the Examiner believes that the lack of pricing information is fatal, but such a result is unsupported by law or common practice in the industry.

Thus, as in the case of Lands' End Inc. v. Manbeck, 24 USPQ2d 1314 (E.D. Va. 1992), applicant maintains that the specimens constitute displays associated with the goods and therefore evidence trademark use of the mark "PB.WEB".

We agree with the Examining Attorney, however, that the specimens furnished by applicant are merely advertising material and that such material has not been shown to have been used as a display in a point-of-sale presentation for applicant's software and associated instruction manuals.[7] As the Examining Attorney accurately observes in his brief with respect to each of the three identical specimens submitted by applicant:

> It consists of a single-sided, glossy page entitled "MediaShare's® PB.web[TM]**FactSheet**." (Emphasis added.) The page shows three computer screen displays, [the bottom] one of which is labeled "Actual HTML Web page." The top display is clearly a prompt screen for another of the applicant's software programs entitled PRODUCTBASE. The middle display is a screen labeled "ProductBase - Catalog Demo." The bottom display is [additionally] labeled "Cycling Outfits." None of the screen displays include or in any way feature the mark PB.WEB. PB.WEB is described elsewhere in the fact sheet as "an add-on module to the ProductBase system, [which] automatically generates and indexes World Wide Web compatible HTML documents."

Thus, contrary to applicant's assertions, none of the computer monitor display screens reproduced in applicant's "fact sheet" brochure or "catalog page" specimens clearly appears to constitute or include a picture of applicant's "PB.WEB" computer software, whether in use or otherwise.

---

[7] We also note, as has the Examining Attorney, that there is no contention by applicant that, due to the impracticality of placing its "PB.WEB" mark on the goods or on any containers, packaging, tags, labels or displays associated therewith, the specimens constitute documents associated with the goods or their sale. In any event, as the Examining Attorney points out, "[c]omputer software is extremely easy to tag or label ... as it normally comes on diskettes or CD-ROMs" and "[i]t also usually includes instruction manuals or pamphlets" bearing the mark.

Consequently, unlike the situation described in *Lands' End*, supra at 1316, applicant's specimens do not utilize the mark "PB.WEB" sufficiently near any picture of the goods, which are variously referred to in the specimens as "a software module for publishing product information on the World Wide Web and the Internet" and as "an add-on module to the ProductBase system," so as to associate the mark with a depiction of the goods. As the Examining Attorney persuasively points out in his brief:

> The mark is not used in connection with or even in close proximity to any of the photographs on the page. Even if the pictures on the page were deemed to be pictures of the goods at issue, the mark is not used at any point in such a manner that potential purchasers would associate it with those pictures. Potential purchasers would most likely view these as two pictures of the PRODUCTBASE program in operation and an example of the end product from using the PRODUCTBASE program.

Furthermore, while the right-hand column of the specimens lists certain features and benefits provided by applicant's "PB.WEB" software, the description thereof, as the Examining Attorney notes, is "in the laudatory manner customarily reserved for advertising materials." More importantly, however, such description, like the rest of the text of the advertising copy in the specimens, omits any information as to product price and how to order applicant's software. Unlike the "KETCH" purse pictured and described in the specimens in *Lands' End*, supra at 1316, which included price information "so that a customer can make a decision to purchase an item straight from the identification in the catalogue," a potential customer for

6

applicant's "PB.WEB" software lacks such crucial purchasing

decision information as the price of the product and the

conditions or terms on which it is licensed or otherwise sold.

Consequently, as the Examining Attorney convincingly maintains in

his brief:

> [T]he specimens do not provide all of
> the information necessary to order the goods
> but merely include an address and phone
> number, as any normal advertising may.  The
>
> court in *Lands' End* held that the catalogs in
> question were acceptable because "[a]
> customer can identify a listing and make a
> decision to purchase by filling out the sales
> form and sending it in or by calling in a
> purchase by phone."  *Lands' End*, 24 USPQ2d at
> 1316.  The specimens submitted by the
> applicant do not include a sales form, a
> price for the goods, or any of the other
> information normally associated with ordering
> goods via phone or mail.  A phone number, an
> Internet address and a mailing address are
> included but no offers to accept orders or
> special instructions on placing orders appear
> anywhere on the specimens.  The applicant
> argues that the inclusion of computer system
> requirements shows that the specimens are to
> be used to order the goods.  Many different
> manufacturers of consumer goods routinely
> provide performance characteristics and/or
> statistical data about the use and abilities
> of their goods in their advertisements.  Such
> advertisements, even when including a phone
> number and/or mailing address for the
> manufacturers of such ... goods[,] would not
> be perceived by consumers as catalogs.
> Consumers would view such materials merely as
> informational advertisements, just as they
> would view the applicant's specimens.  Thus
> the specimens do not contain adequate
> information for routinely and easily placing
> orders for the goods.  Proper catalogs would
> contain such information.

It is plainly the case, therefore, that the specimens submitted by applicant are simply advertising material. Such material, generally speaking, is not acceptable as specimens for goods. This is because any material whose function is simply to tell a prospective purchaser about the goods or to promote the sale of the goods is unacceptable to support trademark use. See, e.g., In re Bright of America, Inc., 205 USPQ 63, 71 (TTAB 1979); In re Dura Corp., 188 USPQ 701, 702 (TTAB 1975); In re Polymer Machinery Corp., 183 USPQ 573, 574 (TTAB 1974); and In re Mautz Paint & Varnish Co., 157 USPQ 637, 638 (TTAB 1968).

There remains, however, the question of whether advertising material such as applicant's "fact sheet" brochure or "catalog page" specimens may also function in certain circumstances as displays associated with the goods. The Board, in In re Bright of America, Inc., supra, indicated in general that:

> A display associated with the goods ... comprises essentially point-of-sale material such as banners, shelf-talkers, window displays, menus, or similar devices which are designed to catch the attention of purchasers and prospective purchasers as an inducement to consummate a sale and which prominently display the mark in question and associate it or relate it to the goods in such a way that an association of the two is inevitable even though the goods may not be placed in close proximity to the display or, in fact, even though the goods may not physically exist at the time a purchaser views the display.

TMEP Section 905.06, in accordance therewith, instructs that (**emphasis added**):

8

>       Displays associated with the goods
>       essentially comprise point-of-sale material,
>       such as banners, shelf-talkers, window
>       displays, menus and similar devices.
>
>       These items must be designated [sic] to
>       catch the attention of purchasers and
>       prospective purchasers as an inducement to
>       consummate a sale.  Further, the display must
>       predominantly display the mark in question
>       and associate it with, or relate it to, the
>       goods.  The display must be related to the
>       sale of the goods in such a way that an
>       association of the two is inevitable.  This
>       is true even though the goods may not be
>       placed in close proximity to the display or,
>       in fact, the goods may not physically exist
>       at the time a purchaser views the display.
>       See *In re Bright of America, Inc.*, 205 USPQ
>       63 (TTAB 1979), and cases cited therein.
>       ....
>
>       **Folders and brochures describing goods
>       and their characteristics or serving as
>       advertising literature are not per se
>       "displays."  In order to rely on such
>       materials as specimens, an applicant must
>       submit evidence of point-of-sale
>       presentation.**  *See In re Ancha Electronics
>       Inc.*, 1 USPQ2d 1318 (TTAB 1986); *In re
>       Columbia Chase Corp.*, 215 USPQ 478 (TTAB
>       1982).  ....

Here, as the Examining Attorney indicates in his brief, there is an absence of any photographs or other evidence demonstrating that the advertising specimens filed by applicant are utilized in point-of-sale presentations for applicant's goods, such as being placed immediately adjacent to a diskette or CD-ROM containing its "PB.WEB" software or a copy of the instruction manuals therefor.  Applicant's "fact sheet" brochures or "catalog pages," instead, merely advertise the availability of its "PB-WEB" software and highlight certain of the product's most

9

prominent or desirable features, but such advertising simply has not been shown, in the absence of an explanation or evidence concerning its possible use in point-of-sale presentations, to function as displays associated with the goods. <u>Compare</u> In re Columbia Chase Corp., 215 USPQ 478, 479-80 (TTAB 1982) <u>with</u> In re Ancha Electronics Inc., 1 USPQ2d 1318, 1320 (TTAB 1986). The specimens, therefore, do not demonstrate trademark use of the mark "PB.WEB" for "computer software for publishing information on a computer network and instruction manuals therefor, sold together as a unit".

**Decision:** The refusal on the ground that the specimens fail to evidence trademark use is affirmed.

J. D. Sams

R. L. Simms

G. D. Hohein
Administrative Trademark Judges,
Trademark Trial and Appeal Board

<u>Appendix</u>

# MediaShare's
# PB.web™ FACT SHEET
## Electronic Catalog Publishing for the Internet

*PB.web is a software module for publishing product information to the World Wide Web and the Internet. Based on MediaShare's unique ProductBase® technology, PB.web allows ProductBase users to automatically generate HTML (HyperText Markup Language) documents quickly and easily. These documents can be loaded onto a Web server where they can be accessed by millions of Internet users all over the world.*





*Actual HTML Web page.*

### INTERNET PUBLISHING

Once you've built a multimedia product information database with ProductBase, you can publish that information in a variety of ways. Using a pull-down menu, you can create an interactive electronic catalog on CD-ROM, or generate HTML (HyperText Markup Language) documents for the Internet. It's that simple.

This tool-based architecture distinguishes MediaShare from other electronic catalog companies. With ProductBase, you don't have to start from scratch every time you want to update your catalog or publish it in a different form. The media content is completely reusable.

As an add-on module to the ProductBase system, PB.web automatically generates and indexes World Wide Web compatible HTML documents. These documents can contain any combination of text, color images, audio, and video.

### PB.web BENEFITS

* *Customers can use an Internet browser such as Mosaic to access the on-line ProductBase catalog over the World Wide Web.*

* *Field sales professionals and distributors can receive sales and marketing updates via the Internet.*

* *Automatically generate table of contents, internal hypertext links and order forms.*

* *Users can navigate through the ProductBase using the table of contents, keyword searches and hyperlinks to other documents.*

* *Quickly retrieve product specifications, sales collateral, new product announcements, press releases, competitive comparisons, pricing updates, and other marketing over the Internet.*

### SYSTEM REQUIREMENTS:

80386-based computer running at 25MHz
VGA, 640x480 color monitor with 16 or 256 color
Windows compatible mouse or other device
4MB random-access memory (RAM)
Minimum 80MB hard drive (depending on amount of media)
MS DOS 3.3 or later
Microsoft Windows 3.1 or later



**MediaShare**
*Corporate Headquarters*
*2035 Corte Del Nogal*
*Carlsbad, CA 92009*
*(619) 931-7171 • fax (619) 431-2081*
*Internet pb-info@mediashare.com*
*URL http://www.mediashare.com/mshare/*

*MediaShare offers a full line of Interactive Catalogs for Microsoft® Windows™ systems.*

MediaShare is a registered trademark of MediaShare Corporation. ProductBase and PB.web are trademarks of MediaShare Corporation. Microsoft is a registered trademark, and Windows is a registered trademark of Microsoft Corporation.